```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

RICHARD A. WILLIAMSON, ON          :
BEHALF OF AND AS TRUSTEE FOR
AT HOME BONDHOLDERS'               :
LIQUIDATING TRUST,
                                   :
               Plaintiff,              11 Civ. 4948 (LTS)(HBP)
                                   :
     -against-
                                   :
VERIZON COMMUNICATIONS INC.,
VERIZON SERVICES CORP., VERIZON    :
CORPORATE RESOURCES GROUP LLC,
VERIZON DATA SERVICES LLC, and     :
VERIZON NEW YORK, INC.,
                                   :
               Defendants.
                                   :
-----------------------------------X

RICHARD A. WILLIAMSON, ON          :
BEHALF OF AND AS TRUSTEE FOR
AT HOME BONDHOLDERS'               :
LIQUIDATING TRUST,
                                   :
               Plaintiff,              13 Civ. 645 (LTS)(HBP)
                                   :
     -against-                         REPORT AND
                                   :   RECOMMENDATION
AT&T OPERATIONS, INC. and
AT&T SERVICES, INC.,               :

               Defendants.         :

-----------------------------------X
```

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LAURA TAYLOR SWAIN, United States

District Judge,

I.  <u>Introduction</u>

By notice of motion dated October 16, 2012, defendants AT&T Operations, Inc. and AT&T Services, Inc. ("AT&T") and Verizon Communications, Inc., Verizon Services Corp., Verizon Corporate Resources Group LLC, Verizon Data Services LLC and Verizon New York, Inc. ("Verizon") (collectively, "Defendants") move for spoliation sanctions against plaintiff Richard A. Williamson, on behalf of and as trustee for At Home Bondholders' Liquidating Trust (Docket Item 144 in 11 Civ. 4948).[1]  Defendants seek dismissal of the complaint with prejudice or, in the alternative, the imposition of an adverse inference jury instruction.

For the following reasons, I recommend[2] that Defendants' motion be denied.

_____

[1]Both AT&T and Verizon were named as defendants in the action docketed under 11 Civ. 4948.  However, subsequent to the filing of this motion, the Honorable Laura Taylor Swain, United States District Judge, granted AT&T's motion to sever and a new case as to AT&T was docketed under 13 Civ. 645.  The two cases are consolidated for pre-trial proceedings.  Unless otherwise stated, all docket references will be to 11 Civ. 4948.

[2]Because Defendants seek dispositive relief, it is appropriate to address their motion by way of Report and Recommendation.

2

II.   <u>Background</u>

On July 19, 2011, Williamson, on behalf of and as trustee for At Home Bondholders' Liquidating Trust ("BHLT"), commenced this patent infringement action against AT&T and Verizon.  BHLT is the beneficial owner of the former At Home Corporation's ("At Home") patents concerning Internet Protocol television (Compl. ¶ 2).  Plaintiff alleges that Verizon's FiOS and AT&T's U-verse products and services infringe these patents (Compl. ¶ 3).

A.   <u>At Home's Bankruptcy</u>

In 2001, At Home filed a petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the Northern District of California.  <u>In re At Home Corporation</u>, No. 01-32495-TC (Bankr. N.D. Cal.).  At Home entered into a plan of liquidation under which it did not survive as an independent operating company.  Instead, as of the effective date of the plan -- September 30, 2002 -- three liquidating trusts were created to distribute At Home's assets to its creditors (Declaration of Richard B. Harper, Esq. in Support of Defendants' Motion for Spoliation Sanctions, dated Oct. 16, 2012, Docket Item 145 ("Harper Decl.") Exs. 1, 2; Declaration of Brian T. Bagley, Esq.

3

in Support of Plaintiff's Memorandum in Opposition to Defendants' Motion for Spoliation Sanctions, dated Nov. 21, 2012, Docket Item 166 ("Bagley Decl.") Ex. B ¶ 3).  First, At Home Liquidating Trust ("AHLT") was granted legal title to all of At Home's records and its intellectual property rights, including the patents-in-suit (Harper Decl. Ex. 2 at Article 7.C; Bagley Decl. Ex. D ¶ 3).  Second, BHLT was granted the rights to At Home's claims -- including the right to bring patent infringement suits -- against the following entities:  AT&T Corporation, Comcast Corporation and Cox Communications, Inc. (collectively, the "Controlling Shareholders") (Harper Decl. Ex. 1 ¶ 8(iii); Bagley Decl. Ex. B ¶ 4).  Finally, At Home General Unsecured Creditors' Liquidating Trust ("GUCLT") was granted the rights to At Home's claims against all parties other than the Controlling Shareholders (Harper Decl. Ex. 1 ¶ 8(vi)).  Each trust had a separate and independent trustee (Bagley Decl. Ex. A ¶ 3; Ex. D. ¶ 2).

Beginning in the middle of 2008, AHLT, GUCLT and BHLT entered into settlement negotiations concerning the transfer of ownership of At Home's patents that were then held by AHLT (Bagley Decl. Ex. A ¶ 9).  After the Bankruptcy Court approved the settlement agreement in January 2010, BHLT received ownership of the At Home patents that are the subject of these actions

(Bagley Decl. Exs. A ¶¶ 9-10, C and F).  However, the patent
assignment expressly provided that BHLT was not the successor of
AHLT (Bagley Decl. Exs. A ¶ 10 and F).  Because it was now the
owner of the patents, BHLT was now permitted to bring patent
infringement actions against any party, and was no longer limited
to asserting claims against only the Controlling Shareholders
(Bagley Decl. Ex. A ¶¶ 9-11).

      B.  The Storage Agreement
          with Iron Mountain

      Prior to the effective date of At Home's bankruptcy
plan, At Home made arrangements to store its records.  The
agreement that created the three trusts provided that At Home
"shall also prepay the costs to transport, index and centrally
store all retained documents from September 30, 2002 to September
30, 2005, and the cost to destroy such documents thereafter"
(Harper Decl. Ex. 1 ¶ 7).  To that end, At Home considered
proposals from several storage vendors and evaluated these
proposals on the assumption that its documents would be destroyed
after three years (Harper Decl. Ex. 10 at JC0000021).  At the
same time, however, At Home also noted that "[s]torage fees
beyond 3 years [were] to be paid by creditor's committee" (Harper
Decl. Ex. 10 at JC0000023).

At Home selected Iron Mountain Information Management, Inc. ("Iron Mountain"), which had previously stored its records, as its storage vendor (Bagley Decl. Ex. D ¶ 3).  In April 2002, At Home entered into a storage agreement with Iron Mountain ("the Storage Agreement") (Harper Decl. Ex. 4).  Neither Williamson nor BHLT was a party to the Storage Agreement.  Under the Storage Agreement, At Home pre-paid the costs for three years of storage for its documents, as well as the costs for their destruction (Harper Decl. Ex. 5).

Iron Mountain's Rule 30(b)(6) witness Mark Mizuhara characterized this agreement as an "automatic destruction account" meaning that At Home "prepaid in advance for their records to be stored for a certain period of time, and after that period of time, the records would be destroyed" (Harper Decl. Ex. 7 at 35:23-36:4).  He further testified that these types of agreements were not "that prevalent" (Harper Decl. Ex. 7 at 36:8), but he also acknowledged that they were not uncommon at the time because "the Silicon Valley was going through a lot of companies that were going through bankruptcies" (Harper Decl. Ex. 7 at 36:5-8).

Terri Curtis, who was formerly At Home's Vice President and who signed the Storage Agreement on behalf of At Home, testified that Iron Mountain required At Home to pre-pay the

destruction costs because At Home was a debtor in a liquidating bankruptcy (Bagley Decl. Ex. E at 48:22-49:13).

The Storage Agreement provided for a three-year term, with the option of a one-year renewal (Harper Decl. Ex. 5 at AHT_0002089 ("The term of the Agreement of which this Schedule A is a part will commence on the Effective Date indicated above and will continue until the end of the month that is the 35th month anniversary.  Unless written notice of non-renewal is delivered by either party to the other not less than thirty days prior to the expiration date, the Agreement will automatically renew for additional successive one-year terms.")).  Although the "New Account Checklist" listed a "Letter of Authorization for Destruction of documents at end of year 3," no such letter is included with the Storage Agreement and it is not clear from the record whether any such letter authorizing destruction ever existed (Harper Decl. Ex. 5 at AHT_0002093).  However, in a letter dated April 17, 2002 (the same day that the Storage Agreement was entered into), At Home specifically requested "that Iron Mountain confirm in writing with Terry Johnson [at O'Melveny & Myers] at the address below prior to any destruction" (Harper Decl. Ex. 5 at AHT_0002083).  O'Melveny & Myers served as bankruptcy counsel to At Home.

After the initial three-year term of the Storage
Agreement expired, none of At Home's documents were destroyed
(Bagley Decl. Ex. J at AHT_0002100).  Instead, At Home continued
to store documents with Iron Mountain and even placed additional
inventory with Iron Mountain (Bagley Decl. Ex. D ¶ 10; Bagley
Decl. Ex. J at AHT_0002100).  Mizuhara testified that At Home
should have added the new inventory under a new account, rather
than under the existing account created by the Storage Agreement
(Supplemental Declaration of Richard B. Harper, Esq. in Support
of Defendants' Motion for Spoliation Sanctions, dated Dec. 14,
2012, Docket Item 179, ("Harper Suppl. Decl.") Ex. 33 at 108:21-
109:23).  Nonetheless, Iron Mountain continued to invoice At Home
regularly for storage costs and At Home paid these bills (Bagley
Decl. Ex. D ¶ 11).

     C.   The Destruction of
         At Home's Documents

In the fall of 2007, Iron Mountain destroyed virtually
all of At Home's documents.  AHLT first became aware of this
destruction when it began to receive invoices from Iron Mountain
that reflected charges for document destruction (Bagley Decl. Ex.
G at 148:13-20).  After receiving these invoices, AHLT contacted
Iron Mountain and instructed them not to destroy any of At Home's

records (Harper Decl. Ex. 19 at AHT_0002081), but it appears that this instruction came too late and that the vast majority of documents had already been destroyed.

Jacquelyn Crawford-Smith, AHLT's former trustee, testified that she did not instruct Iron Mountain to destroy the documents (Bagley Decl. Ex. G at 148:13-24, 200:13-201:2; see also Bagley Decl. Ex. D ¶ 4, Crawford-Smith Decl. ("At no time did I or anyone else on behalf of the AHLT destroy At Home's [records] nor did I authorize anyone else to do so.")). Mizuhara, Iron Mountain's representative, testified that Iron Mountain had no written instruction from At Home directing the destruction of the documents (Bagley Decl. Ex. H at 135:20-22). He further testified that, after the destruction in 2007, Iron Mountain conducted a review of the incident (Bagley Decl. Ex. H at 193:6-13).

On January 28, 2008, Iron Mountain sent a letter to At Home reporting on its investigation of the destruction of At Home's documents (Bagley Decl. Ex. J).  This letter reported that "there was conflicting information in Iron Mountain systems related to the inventory and status of the destruction order associated with the account" and, accordingly, when Iron Mountain reviewed its inventory storage, it determined that At Home's records were "a pre-paid destruction order that was unprocessed"

9

and proceeded with destruction (Bagley Decl. Ex. J at
AHT_0002101).  Iron Mountain acknowledged, however, that At Home
had "requested that Iron Mountain contact Terry Johnson of
O'Melveny & Meyers LLP prior to destruction" and that "the non-
standard request made by At Home Corporation was not followed"
(Bagley Decl. Ex. J at AHT_0002100-01).  Mizhura testified that
the Iron Mountain team involved was reprimanded and that, as a
result of this incident, Iron Mountain implemented a new process
to prevent similar future occurrences.

III.  <u>Analysis</u>

 A.  Applicable Law:
   <u>Spoliation Sanctions</u>

 "Spoliation is the destruction or significant
alteration of evidence, or the failure to preserve property for
another's use as evidence in pending or reasonably foreseeable
litigation."  <u>West v. Goodyear Tire & Rubber, Co.</u>, 167 F.3d 776,
779 (2d Cir. 1999).  A court may impose sanctions on a spoliating
party based on its "inherent power to control the judicial
process and litigation, but [that] power is limited to that
necessary to redress conduct which abuses the judicial process."
<u>Passlogix, Inc. v. 2FA Tech., LLC</u>, 708 F. Supp. 2d 378, 409
(S.D.N.Y. 2010) (Leisure, D.J.) (internal quotation marks

10

omitted), quoting Pension Comm. of Univ. of Montreal Pension Plan
v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 465 (S.D.N.Y.
2010) (Scheindlin, D.J.), abrogated on other grounds, Chin v.
Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012).  "The
determination of an appropriate sanction for spoliation, if any,
is confined to the sound discretion of the trial judge, and is
assessed on a case-by-case basis." Fujitsu v. Fed. Express
Corp., 247 F.3d 423, 436 (2d Cir. 2001); see also Harkabi v.
SanDisk Corp., 275 F.R.D. 414, 418 (S.D.N.Y. 2010) (Pauley,
D.J.); Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 430
(S.D.N.Y. 2004) (Scheindlin, D.J.).  The sanction imposed should
"'serve the threefold purpose of (1) deterring parties from
destroying evidence; (2) placing the risk of an erroneous
evaluation of the content of the destroyed evidence on the party
responsible for its destruction; and (3) restoring the party
harmed by the loss of the evidence helpful to its case to where
the party would have been in the absence of spoliation.'" Chin
v. Port Auth. of N.Y. & N.J., supra, 685 F.3d at 162 (internal
alterations omitted), quoting Byrnie v. Town of Cromwell, 243
F.3d 93, 107 (2d Cir. 2001).

     The majority of cases in this Circuit describe a
spoliation motion as having three elements:  "(1) that the party
having control over the evidence had an obligation to preserve it

11

at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg, LLC, supra, 229 F.R.D. at 430; see also Chin v. Port Auth. of N.Y. & N.J., supra, 685 F.3d at 162. Unlike this case, however, most of these cases arose out of facts in which there was no question that the voluntary conduct of the party bearing the obligation to preserve the evidence, or its agent, was at least a substantial factor in the loss of the evidence.

However, where the evidence is lost as a result of events beyond the control of the party bearing the obligation to preserve evidence, courts have declined to find spoliation. For example, in In re Grace Lines, Inc., 397 F. Supp. 1258, 1268 (S.D.N.Y. 1973) (Griesa, D.J.), aff'd, 517 F.2d 404 (2d Cir. 1979), the issue in dispute was the cause of the stranding and sinking of a steamship. The claimants sought to have the court draw an adverse inference against the owners based on missing navigation logs and a missing segment of course recorder tape. The Honorable Thomas P. Griesa, United States District Judge, refused to draw the inference sought by the claimants, finding that the documents were lost due to the vessel's sinking or were

12

taken by unknown individuals who may not have been under the vessel owner's control.[3]  See also In re WRT Energy Sec. Litig., 246 F.R.D. 185, 195 (S.D.N.Y. 2007) (Francis, M.J.) ("A party charged with preservation will not be subject to sanctions if, for example, the evidence is destroyed by lightning."); Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (Scheindlin, D.J.) (noting that destruction of documents would not be negligent if caused by events outside of the party's control); Litton Sys., Inc. v. Amer. Tel. & Tel. Co., 91 F.R.D. 574, 576 (S.D.N.Y. 1981) (Conner, D.J.) ("Destruction or concealment by a party of relevant documents in its files threatens the viability and public acceptance of the [adversarial system of civil justice.]" (emphasis added)).  In other circuits, the necessity of a causal relationship between the conduct attributable to a party bearing the obligation to preserve and the loss of the evidence is well established.  E.g., State Farm Fire & Cas. Co. v. Steffen, Civil Action No. 09-4965, 2013 WL 1721678 at *9-*13 (E.D. Pa. 2013) (refusing to draw adverse

---

[3]At the time the vessel sunk it was under the joint command of its master and a pilot.  A maritime pilot is an independent contractor, Clark v. Solomon Nav., Ltd., 631 F. Supp. 1275, 1277 (S.D.N.Y. 1986) (Motley, D.J.); In re North Atlantic & Gulf S.S. Co., 192 F. Supp. 107, 109 (S.D.N.Y. 1961) (Van Pelt Bryan, D.J.), not under the vessel owner's control.  As a potentially responsible party, the pilot in Grace Lines had his own incentive to purloin the missing records.  397 F. Supp. 2d at 1269.

inference against insured based on the destruction of evidence by his insurer; the former found not to control the latter); Gordon v. Dreamworks Animation SKG, Inc., Civil Action No. 1:11-10255-JLT, 2012 WL 1292520 at *3 (D. Mass. Mar. 28, 2013) (party seeking sanctions for spoliation must prove, among other things, "an act of destruction"); Haskins v. First American Title Ins. Co., Civil No. 10-5044 (RMB/JS), 2012 WL 5183908 at *4 (D.N.J. Oct. 18, 2012 (spoliation required proof that evidence was "actually . . . suppressed or withheld by the party," among other things); Bensel v. Allied Pilots Ass'n, 263 F.R.D. 150, 153 (D.N.J. 2009) (declining to impose spoliation sanctions where documents were inadvertently destroyed by document storage company); White v. Office of the Public Defender, 170 F.R.D. 138, 147 (D. Md. 1997); Jamie S. Gorelick, Stephen Marzen, Lawrence Solum, Destruction of Evidence §§ 2.13, 3.9 (1989).

The purposes underlying the spoliation doctrine also warrant limiting spoliation sanctions to situations where the loss of evidence is attributable to the voluntary conduct of the party bearing the obligation to preserve or its agent.  A spoliation sanction against a party cannot deter conduct that is not attributable to or under the control of the party sanctioned. Similarly, sanctioning such a party will not put the risk of an

erroneous evaluation of the evidence on the party responsible for the loss.

Accordingly, I conclude that spoliation sanctions are appropriate only when evidence is lost as a result of voluntary conduct that is fairly attributable to the party bearing the obligation to preserve. If the evidence is lost as a result of factors over which the party has no control, a spoliation sanction is unwarranted regardless of how the remaining elements line up.

B.  Application

There is no basis for an award of sanctions here because the documents were destroyed solely as a result of Iron Mountain's mistake for which plaintiff bears no responsibility.

First, the destruction of At Home's records is attributable to events outside of plaintiff's control. At Home specifically requested that Iron Mountain contact its counsel at O'Melveny & Myers prior to any destruction (Harper Decl. Ex. 5). Despite Iron Mountain's characterization of this request as "non-standard," this does not change the fact that At Home made the request and, more importantly, that Iron Mountain failed to follow this request. Indeed, Iron Mountain itself concedes that the destruction of At Home's documents was done without At Home's

15

authorization (Bagley Decl. Ex. H at 193:6-13).  The accidental
nature of the destruction is further evidenced by the fact that
Iron Mountain reprimanded the employees involved and implemented
changes in its own procedures to prevent similar future
occurrences (Bagley Decl. Ex. H at 193:6-13).  These remedial
efforts evidence that Iron Mountain viewed itself as responsible
for the destruction.

   Moreover, although Defendants assert that the Storage
Agreement "was a clear, authorized directive for Iron Mountain to
destroy the entirety of the documents controlled by Plaintiff's
trust" (Defendants' Memorandum in Support of Their Motion for
Spoliation Sanctions, Docket Item 149 ("Defs.' Mem.") at 3), a
closer reading of the Storage Agreement requires a different
conclusion.  Although Iron Mountain's representative
characterized the Storage Agreement as "auto-destruct," this
label does not take into account the actual terms of the Storage
Agreement, the circumstances surrounding its formation or the
manner in which it was actually performed.  The Storage Agreement
did not call for the automatic destruction of At Home's
documents, but rather provided for an automatic renewal after the
expiration of its initial term (Harper Decl. Ex. 5 at
AHT_0002089).  This is illustrated by the fact that At Home
continued to store its documents and submitted additional records

for storage with Iron Mountain up until the destruction in 2007.
Although the Storage Agreement reflects that At Home pre-paid
Iron Mountain for destruction costs, Terri Curtis, who signed the
Storage Agreement on behalf of At Home, testified that Iron
Mountain required this prepayment as security given At Home's
status as a debtor in a liquidating bankruptcy and that this pre-
payment did not indicate that destruction was "automatic" (Bagley
Decl. Ex. E at 48:22-49:13).[4]  This testimony is also
corroborated by testimony of Iron Mountain's representative that
similar contracts were "prevalent" at that time in Silicon
Valley, where At Home was based, because the long-term prospects
of many companies were not certain (Harper Decl. Ex. 7 at 36:5-
8).

    Defendants' claim that the Storage Agreement called for
the "automatic destruction" of At Home's records is also
undermined by the fact that for two years past the date for the
purported "automatic destruction," Iron Mountain continued to

_____

    [4]Defendants claim that an At Home PowerPoint presentation
dated April 8, 2002 that discussed potential storage vendors
confirmed At Home's intention to destroy the documents after
three years (Defs.' Mem. at 4 n.3).  This presentation, however,
only discussed destruction as an assumption -- and not a foregone
conclusion -- in evaluating the pricing options (Harper Decl. Ex.
9 at JC0000021).  Indeed, this presentation specifically
contemplated the cost of storage past three years (see, e.g.,
Harper Decl. Ex. 9 at JC0000023 ("Storage fees beyond 3 years to
be paid by creditor's committees.")).

store At Home's documents and accepted additional inventory.
Although Iron Mountain's representative testified that new
inventory should have been added under a new account number
rather than under the existing account created by the Storage
Agreement (Harper Decl. Ex. 33 at 108:21-109:23), it appears that
At Home's documents were maintained without incident for two
years notwithstanding this departure from Iron Mountain's
standard procedure.

Defendants also claim that Williamson had express
notice that the documents would be destroyed after three years
because the settlement agreement which created the three trusts
provided that "[t]he Debtors shall also prepay the costs to
transport, index and centrally store all retained documents from
September 30, 2002 to September 30, 2005, and the cost to destroy
such documents thereafter" (Harper Decl. Ex. 1 ¶ 7), and,
therefore, he should have made efforts to modify the Storage
Agreement.  This provision, however, does not definitively
establish that At Home's documents would be destroyed.  Rather,
it addressed who would bear the costs associated with a
destruction.  Even if I were to conclude that Williamson should
have modified the Storage Agreement, this does not establish his
responsibility for the destruction.  In 2007, AHLT, not BHLT,
held legal title to At Home's documents, and plaintiff's

18

practical ability to change the terms of the Storage Agreement would have likely been extremely limited.  Moreover, given the continuing and satisfactory relationship between Iron Mountain and At Home from 2002 to 2007, there did not appear to be a reasonable basis for plaintiff to have suspected the need for modifications.

The evidence is clear and unequivocal that the documents were destroyed solely as a result of Iron Mountain's unilateral mistake.  Because the documents were destroyed as a result of conduct over which plaintiff had no control, there is no causal relationship between plaintiff's conduct or conduct attributable to plaintiff and the loss of the evidence and, therefore, no basis for an award of sanctions for spoliation.

IV.  Conclusion

For the foregoing reasons, I respectfully recommend that Defendants' motion for spoliation sanctions be denied.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Laura Taylor Swain, United States District Judge, 500 Pearl Street, Room 755, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Swain.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        July 23, 2013

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel